OCT 15 2025 PM1:15
FILED-USDC-CT-HARTFORD



**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

| | |
|---|---|
| *Connecticut Financial Center* | *(203)821-3700* |
| *157 Church Street, 25th Floor* | *Fax (203) 773-5376* |
| *New Haven, Connecticut 06510* | *www.justice.gov/usao/ct* |

October 15, 2025

*Via Electronic Mail*
Christopher Y. Duby, Esq.
The Law Office of Christopher Duby LLC
~~59 Elm Street, 3rd Floor~~ 491 Main St.
~~New Haven, CT 06510~~ Branford, CT 06405    ©YP RD

> Re:    United States v. Reynaldo Diaz
>         Criminal Nos. 3:24CR186(SVN)/3:25CR169(SVN)

Dear Attorney Duby:

This letter confirms the plea agreement between your client, Reynaldo Diaz (the "defendant"), the United States Attorney's Office for the District of Connecticut, and the United States Attorney's Office for the Northern District of Ohio (the "Government") in the above criminal matters.

## THE PLEA AND OFFENSE

In consideration for the benefits offered under this agreement, the defendant agrees to plead guilty to Counts One and Three in the indictment returned in the District of Connecticut, charging violations of 18 U.S.C. §§ 371 and 1201, respectively. The defendant further agrees to plead to Count One of the Information filed in the Northern District of Ohio charging a violation of 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud).

**For the District of Connecticut charges,** the defendant understands that, to be guilty of Count One, the conspiracy charge, the following essential elements must be satisfied:

1. An unlawful agreement existed among at least two people to violate the law, here, to conduct a carjacking and a kidnapping;

2. The defendant knowingly and willfully joined the conspiracy; and

3. Any member of the conspiracy committed an overt act in furtherance of the conspiracy.

*Christopher Y. Duby, Esq.*
*Page 2*

And as to Count Three, the kidnapping charge, the following essential elements must be satisfied:

1.  The defendant seized (or confined or inveigled or decoyed or kidnapped or abducted or carried away) of the victims in this case, R.C. and S.C.;

2.  The defendant held the victims for ransom (or reward or for any other reason);

3.  The defendant used the mails or any means, facility, or instrumentality of interstate or foreign commerce (such as a cell phone) in committing or in furtherance of the commission of the offense; and

4.  The defendant acted unlawfully, willfully, and knowingly.

**For the Northern District of Ohio charges,** the defendant understands that, to be guilty of Conspiracy to Commit Wire Fraud, the following essential elements must be satisfied:

1.  That two or more persons conspired, or agreed, to commit the crime of wire fraud, in violation of 18 U.S.C. 1343; and

2.  The defendant knew of the conspiracy and its objects, aims or goals; and

3.  The defendant joined the conspiracy with the intent that at least one of the conspirators engage in conduct that satisfies the elements of wire fraud; and

4.  A member of the conspiracy did one of the overt acts described in the information which occurred within the six-year statute of limitations for conspiracy for the purpose of advancing or helping the conspiracy.

The object of the conspiracy was wire fraud, for which the following essential elements must be satisfied:

1.  The defendant knowingly participated in or devised or intended to devise a scheme to defraud in order to obtain money or property as charged;

2.  The scheme to defraud included a material misrepresentation or concealment of a material fact;

3.  The defendant had the intent to defraud; and

4.  In advancing, or furthering, or carrying out this scheme to defraud in order to obtain money or property, the defendant transmitted, or caused the transmission of, any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce.

*Christopher Y. Duby, Esq.*
*Page 3*

## THE PENALTIES

### District of Connecticut

<u>Imprisonment</u>

The conspiracy charge in Count One carries a maximum penalty of five years of imprisonment.

The kidnapping charge in Count Three carries a maximum penalty of life imprisonment.

<u>Supervised Release</u>

For Count One: the Court may impose a term of supervised release of not more than three (3) years to begin after any term of imprisonment. 18 U.S.C. § 3583. The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two (2) years per revocation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

For Count Three: the Court may impose a term of supervised release of not more than five (5) years to begin after any term of imprisonment. 18 U.S.C. § 3583. The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to five (5) years per revocation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

<u>Fine</u>

For Counts One and Three: Under 18 U.S.C. § 3571, the maximum fine that may be imposed on the defendant per count is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense or twice the gross loss resulting from the offense, whichever is greater; or (2) $250,000.

<u>Special Assessment</u>

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction, for a total of $200. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

<u>Restitution</u>

In addition to the other penalties provided by law, the Court also must order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

*Christopher Y. Duby, Esq.*
*Page 4*

Interest, penalties, and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (i) and § 3612(g). The defendant reserves the right to request that the Court waive interest and penalties as permitted by statute, and the Government reserves the right to oppose any such request.

Forfeiture

The defendant agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

Credit Report

The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

**Northern District of Ohio**

Imprisonment

The conspiracy charge in Count One carries a maximum penalty of twenty years of imprisonment.

Supervised Release

Count One: In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment up to three years per revocation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

Fine

Count One: Under 18 U.S.C. § 3571, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: twice the gross gain to the defendant resulting from the offense or twice the gross loss resulting from the offense, whichever is greater, or $250,000.

*Christopher Y. Duby, Esq.*
*Page 5*

Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction, for a total of $100. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

Restitution

In addition to the other penalties provided by law, the Court also must order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

Interest, penalties, and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (i) and § 3612(g). The defendant reserves the right to request that the Court waive interest and penalties as permitted by statute, and the Government reserves the right to oppose any such request.

Forfeiture

The defendant agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

**THE SENTENCING GUIDELINES**

Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guidelines determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guidelines application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

*Christopher Y. Duby*, *Esq.*
Page 6

<u>Acceptance of Responsibility</u>

At this time, and subject to the conditions specified below, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's demonstration of acceptance of responsibility for the offense. Moreover, and also subject to the conditions specified below, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's adjusted offense level by one additional level based on both his affirmative acceptance of responsibility as well as his prompt notification of his intention to enter a plea of guilty that permitted the Government to avoid trial preparation. The defendant understands that the Court is not obligated to accept the Government's recommendation under § 3E1.1(a) and that a decrease under § 3E1.1(a) is a prerequisite to a further reduction under § 3E1.1(b).

The Government's recommendation and motion are each conditioned on the defendant's affirmative acceptance of responsibility. If, in the Government's assessment, the defendant engages in any act or omission or takes any litigating position inconsistent with affirmative acceptance of responsibility, the Government is not obligated to (1) recommend a two-point reduction under § 3E1.1(a), or (2) file a third-point motion under § 3E1.1(b) (even if the Court has granted a two-point reduction, and even if the defendant's notification of his intention to enter a plea of guilty permitted the Government to avoid trial preparation).

In assessing whether the defendant has affirmatively accepted responsibility, considerations include (but are not limited to) whether he has: (1) truthfully admitted the conduct constituting the offense(s) of conviction and truthfully admitted (or not falsely denied) any additional relevant conduct for which he is accountable under § 1B1.3 of the Sentencing Guidelines; (2) disclosed to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing his financial condition; (3) engaged in any act indicating that he has not terminated or withdrawn from criminal conduct or associations; (4) engaged in any act that could provide a basis for an adjustment for obstructing or impeding the administration of justice under § 3C1.1 of the Sentencing Guidelines; (5) engaged in any act constituting a violation of any condition of release; or (6) sought to withdraw his guilty plea or taken a position at sentencing not consistent with acceptance of responsibility. The Government expressly reserves the right not to recommend a two-point reduction under § 3E1.1(a) and not to move for a further reduction under § 3E1.1(b)—even if the court has granted a two-point reduction, and even if the defendant's notification of his intention to enter a plea of guilty permitted the Government to avoid trial preparation—based on such considerations or any other ground that, in the Government's assessment, is inconsistent with affirmative acceptance of responsibility.

The defendant understands that he may not withdraw his plea of guilty if, in accordance with the above, the Government does not recommend a reduction under § 3E1.1(a) or move for a further reduction under § 3E1.1(b).

*Christopher Y. Duby, Esq.*
*Page 7*

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation pertaining to the charge in the Northern District of Ohio, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guidelines Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

**District of Connecticut**

The defendant's base offense level under U.S.S.G. § 2A4.1(a) is 32. That level is increased by two (2) levels pursuant to U.S.S.G. § 2A4.1(b)(2)(B) because the victims sustained serious bodily injury, and by an additional two (2) levels under U.S.S.G. § 2A4.1(b)(3) because a dangerous weapon was used, resulting in an adjusted offense level of 36.

**Northern District of Ohio**

The defendant's base offense level under U.S.S.G. § 2B1.1 is 7. That level is increased by 20 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(K) because the loss amount was greater than $9.5 million, by 2 levels pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims, and by 2 levels pursuant to U.S.S.G. § 2B1.1(b)(10)(C) because the offense involved sophisticated means, resulting in an adjusted offense level of 31.

Multiple count adjustment

Units are assigned pursuant to U.S.S.G. § 3D1.4(a), (b) and (c). One unit is assigned to the group with the highest offense level. One additional unit is assigned for each group that is equally serious or from 1 to 4 levels less serious. One-half unit is assigned to any group that is 5 to 8 levels less serious than the highest offense level. Any groups that are 9 or more levels less serious than the group with the highest offense level are disregarded.

| Group/Count | Adjusted Offense Level | Units |
|---|---|---|
| Connecticut | 36 | 1.0 |
| Northern Ohio | 31 | 0.5 |
| | | |
| Total number of Units: | | 1.5 |

*Christopher Y. Duby, Esq.*
*Page 8*

The greater of the adjusted offense levels above is 36. The offense level is increased by 1.5 Units pursuant to the amount indicated in the table at U.S.S.G. § 3D1.4. The combined adjusted offense level is determined by taking the offense level applicable to the group with the highest offense level and increasing the offense level by the amount indicated in the table at U.S.S.G. § 3D1.4. That table specified a 1 level increase to the offense level, resulting in a total offense level of 37.

Assuming the defendant meets the conditions set forth above, three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of 34.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate. The government reserves its right to argue that any such re-calculation is not a basis for any downward departure or variance and its right to oppose any request from the defendant for such a departure or variance.

A total offense level of 34, assuming placement in Criminal History Category I, would result in a Guidelines range of 151 to 188 months of imprisonment (sentencing table) and a fine range of $35,000 to $250,000 (U.S.S.G. § 5E1.2(c)(3)). The defendant also is subject to a supervised release term of two (2) years to five (5) years. U.S.S.G. § 5D1.2.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence. Moreover, the defendant reserves the right to argue that a fine is not appropriate in this case, and the Government reserves the right to argue that a fine is appropriate in this case.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

Information to the Court

The parties reserve their rights to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

*Christopher Y. Duby, Esq.*
*Page 9*

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

### Waiver of Right to Indictment – Northern District of Ohio

The defendant understands that he has the right to have the facts of the Northern District of Ohio case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in the information before an indictment could be returned. The defendant acknowledges that he is waiving his right to be indicted in the Northern District of Ohio case.

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### Discovery

The defendant acknowledges that the Government may not have yet produced all discovery material, including but not limited to discovery under the Jencks Act, 18 U.S.C. § 3500, the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), or the Local Rules of Criminal Procedure, Standing Order on Discovery. The attorneys for the Government are not aware of any information that, in their view, would establish the defendant's factual innocence of the crimes to which the defendant is pleading guilty. However, the attorneys for the Government do not warrant that they have reviewed all material in their possession, or that their assessment of the exculpatory nature of information known to them would be the same as that of the defendant or his counsel. Nonetheless, the defendant acknowledges that (1) he has accepted this plea agreement and decided to plead guilty because he is in fact guilty and seeks no further discovery or disclosures of information, and (2) in reaching that decision, he has not relied upon any representations concerning the Government

*Christopher Y. Duby, Esq.*
*Page 10*

attorneys' assessment of information. On that basis, the defendant waives any and all right to withdraw his plea or attack his conviction, either on direct appeal or collateral attack, on the ground that the Government has not produced any discovery material beyond what already has been produced as of the date of this plea agreement. The Government nevertheless will produce, in advance of sentencing, additional material specifically requested by the defendant in connection with any sentencing issue, to the extent that the requested material is in the Government's possession.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following the defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

### Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims the defendant might raise, the defendant waives the right to challenge the conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Appeal Rights Regarding Sentencing

The parties reserve their respective rights to appeal and to oppose each other's appeal of the sentence imposed as permitted by 18 U.S.C. § 3742.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because the defendant is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and the defendant (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which the defendant is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the

*Christopher Y. Duby*, Esq.
Page 11

representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights the defendant may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which the defendant has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and, in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which the defendant is licensed, or with which the defendant does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut and in the Northern District of Ohio as a result of the defendant's participation in the conduct which forms the basis of the indictment and information in these cases. After sentencing, the Government will move to dismiss Count Two of the indictment in the District of Connecticut because the conduct underlying the dismissed count will have been taken into account in determining the appropriate sentence. This provision does not apply to any conduct unknown to the Government at the time of the signing of this agreement.

*Christopher Y. Duby, Esq.*
*Page 12*

   The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw the guilty plea.

## NO OTHER PROMISES

   The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

   This letter shall be presented to the Court, in open court, and filed in this case.

       Very truly yours,

       DAVID X. SULLIVAN
       UNITED STATES ATTORNEY
       DISTRICT OF CONNECTICUT

       KAREN L. PECK
       ASSISTANT UNITED STATES ATTORNEY

       DAVID M. TOEPFER
       UNITED STATES ATTORNEY
       NORTHERN DISTRICT OF OHIO

       ERICA D. BARNHILL
       ASSISTANT UNITED STATES ATTORNEY

   The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

REYNALDO DIAZ       10/15/25
The Defendant        Date

   I have thoroughly read, reviewed, and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

CHRISTOPHER Y. DUBY, ESQ.   10/15/25
Attorney for the Defendant    Date

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT
### Northern District of Ohio

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to the information from the Northern District of Ohio:

Defendant REYNALDO DIAZ was a resident of Belle Glade, Florida.

Co-conspirator Evan Light ("Light") (charged separately) was a resident of Lebanon, Indiana.

Company 1 provided an online investment platform allowing users to trade cryptocurrency in self-directed individual retirement accounts ("IRAs"). Company 1 was headquartered in Las Vegas, Nevada. Individuals who held Company 1 IRAs resided in jurisdictions throughout the United States, including the Northern District of Ohio.

The Cryptocurrency Exchange was an online platform for buying, selling, transferring, and storing cryptocurrency in interstate commerce. The Cryptocurrency Exchange operated as a remote-first company and had no physical headquarters. Individuals who had accounts on the Cryptocurrency Exchange resided in jurisdictions throughout the United States, including the Northern District of Ohio.

Victim 1 was a resident of the Northern District of Ohio, and held accounts with Company 1 and the Cryptocurrency Exchange.

Victim 2 was a resident of the Southern District of California, and held accounts with Company 1 and the Cryptocurrency Exchange.

From in or around March 2021 through in or around November 2021, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant REYNALDO DIAZ, Evan Light (charged separately), and others known and unknown to the United States Attorney, did knowingly and intentionally combine, conspire, confederate and agree to commit a federal fraud offense, that is: to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

The objects and purposes of the conspiracy and scheme included, but were not limited to, the following: for the conspirators to unjustly enrich themselves and their designees by (a) using a cyber intrusion to obtain access to Company 1's customer information and identify individuals with high-value cryptocurrency accounts on the Cryptocurrency Exchange; (b) using hacking and social engineering techniques to obtain access to targeted Company 1 customers'

*Christopher Y. Duby*, Esq.
Page 14

Cryptocurrency Exchange accounts; (c) diverting cryptocurrency from Cryptocurrency Exchange accounts to accounts and wallets the conspirators controlled; (d) diverting the proceeds for the conspirators' use and the use and benefit of others and to further the conspiracy and scheme; and (e) and concealing the conspiracy and scheme.

It was part of the conspiracy and scheme that:

Co-conspirator 1 exploited a vulnerability in Company 1's web application that allowed the conspirators to obtain approximately 386,000 lines of Company 1's code. Through this exploit the conspirators were able to identify personal identifying information ("PII") of thousands of Company 1's account holders, including an account holder's first name, last name, email address, phone number, and zip code associated with the affected accounts.

Light and Co-conspirator 2 ran the email addresses obtained from the Company 1 intrusion through a program that enabled the conspirators to identify which Company 1 customers also maintained accounts with the Cryptocurrency Exchange (the "Targeted Victims").

Light and Co-conspirator 2 used the information gained through the Company 1 intrusion to hack the Targeted Victims' email accounts to determine the approximate balance of the Targeted Victims' Cryptocurrency Exchange accounts.

Conspirators sent password reset requests for the Targeted Victims' Cryptocurrency Exchange accounts from the Targeted Victims' hacked email addresses in order to gain access to that Targeted Victims' Cryptocurrency Exchange accounts. Conspirators also used the password reset reply from the Cryptocurrency Exchange to determine the account's approximate balance, based on the waiting period for the password reset, as the Cryptocurrency Exchange imposed differing waiting periods for password resets depending on the balance in the account, with a longer waiting period for accounts with higher balances.

If the password reset option was disabled for a particular Targeted Victim, Defendant called the Targeted Victim, posing as a Cryptocurrency Exchange representative, and obtained sensitive account information over the phone directly from the Targeted Victim in order to gain access to the account holder's Coinbase accounts.

Defendant used voice over internet protocol ("VOIP") phone numbers, purchased by Defendant and Light, to contact the Targeted Victims. Defendant and another co-conspirator altered the caller ID information on the VOIP accounts to make it appear as though Defendant was calling from a phone number known to belong to the Cryptocurrency Exchange, rather than from that actual VOIP number. When speaking with the Targeted Victims, Defendant directed them to a fraudulent webpage made to look like the Cryptocurrency Exchange's platform, which helped persuade the Targeted Victims to provide Defendant the two-factor authentication information associated with their accounts.

Using account information the conspirators had obtained, including the two-factor authentication information Defendant had obtained from the Targeted Victims, Light then

*Christopher Y. Duby, Esq.*
Page 15

accessed the Targeted Victims' Cryptocurrency Exchange accounts and transferred the cryptocurrency in those accounts to cryptocurrency wallets under Light's control.  Over the course of the conspiracy, the conspirators stole at least 189.4989793 Bitcoin (BTC) (valued at least as high as $10,283.493.59 in or around April 2021) from Targeted Victims' Cryptocurrency Exchange accounts through these fraudulent transfers.

Light thereafter split the stolen proceeds amongst himself, Defendant, and the other conspirators, sending stolen cryptocurrency to each of their private wallets.

In furtherance of the conspiracy and scheme, and to accomplish the objects and purposes and conceal the existence thereof, a member of the conspiracy committed and caused to be committed, in the Northern District of Ohio, and elsewhere, the following acts, among others:

In or around April 2021, the conspirators obtained Victim 1's PII through their hack of Company 1's web application.

On or about April 7, 2021, Defendant, in Florida, used a VOIP phone number to call Victim 1, in the Northern District of Ohio, while altering the caller ID information to appear to be calling from the Cryptocurrency Exchange.  Defendant identified himself to Victim 1 as a Cryptocurrency Exchange employee named "Danny" and told Victim 1 that he wanted to help Victim 1 resolve a transaction error from several weeks prior.  As a result of Defendant's representations, Victim 1 logged into his computer, his email, and his Cryptocurrency Exchange account while on the phone with Defendant.

Defendant used information Victim 1 provided while on the phone to change settings for Victim 1's Cryptocurrency Exchange account, including to change the two-factor authentication settings, authorize a new device associated with Victim 1's account, and change Victim 1's password.

Using illicit access to Victim 1's email account, Defendant also deleted incoming alerts from Cryptocurrency Exchange 1 in Victim 1's email, preventing Victim 1 from discovering that his email and Cryptocurrency Exchange accounts had been compromised.

From on or about April 7, 2021, through on or about April 8, 2021, after obtaining access to Victim 1's Cryptocurrency Exchange account and concealing their access to and control of that account, Defendant, Light, and their co-conspirators transferred approximately 10.75667325 Bitcoin (BTC) from Victim 1's Cryptocurrency Exchange account to accounts and cryptocurrency wallets the conspirators controlled.

In or around April 2021, the conspirators obtained Victim 2's PII through their hack of Company 1's web application.

On or about April 7, 2021, Defendant used a VOIP phone number to call Victim 2, in the Southern District of California, while altering the caller ID information to appear to be calling from Cryptocurrency Exchange 1.  Defendant identified himself as a Cryptocurrency Exchange 1 employee named "Danny."  To lull Victim 2 into believing that Defendant was

an actual Cryptocurrency Exchange 1 employee and that the call was legitimate, Defendant used his access to Victim 2's compromised email account to purportedly "verify" recent prior transactions Victim 2 had made with his Cryptocurrency Exchange account. Defendant convinced Victim 2 to access Victim 2's two-factor authentication information while on the phone with Defendant, convincing Victim 2 to share Victim 2's Google authentication using screen-sharing software.

Defendant immediately provided Victim 2's information to Light via a separate communications application, enabling Light to access Victim 2's Cryptocurrency Exchange account.

Light began transferring Bitcoin out of Victim 2's Cryptocurrency Exchange account, which caused Victim 2 to notice that Bitcoin was being sent out of his Cryptocurrency Exchange account while still on the phone with Defendant.

When Victim 2 notified Defendant, who was still purporting to be a Cryptocurrency Exchange 1 representative, Defendant hung up on Victim 2 and terminated the call.

On or about April 7, 2021, after obtaining access to Victim 2's Cryptocurrency Exchange account and concealing their access to and control of that account, Defendant, Light, and the other conspirators transferred approximately 109.68080704 BTC from Victim 2's Cryptocurrency Exchange account to accounts and cryptocurrency wallets the conspirators controlled.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

REYNALDO DIAZ
The Defendant


CHRISTOPHER Y. DUBY, ESQ.
Attorney for the Defendant

ERICA D. BARNHILL
ASSISTANT UNITED STATES ATTORNEY

*Christopher Y. Duby, Esq.*
*Page 17*

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

    A. Return the property to the owner of the property or someone designated by the owner; or

    B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

        The greater of -
        (I) the value of the property on the date of the damage, loss, or destruction; or

        (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

    A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

    B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

    C. Reimburse the victim for income lost by such victim as a result of such offense.

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services.

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution also may result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614. Moreover, in the event of default,

*Christopher Y. Duby, Esq.*
*Page 18*

notwithstanding any installment schedule for the payment of restitution, the Court may order payment of the entire amount of restitution due within 30 days after notification of the default, subject to the provisions of 18 U.S.C. §§ 3572(i) and 3613A.